# ATTACHMENT ONE



FILED IN DENVER
DISTRICT COURT
DENVER, COLORADO
COPY-F

2019 JUN 18  PM 1:20

| | |
|---|---|
| **DISTRCT COURT, COUNTY OF DENVER STATE OF COLORADO**<br><br>Court Address:<br><br>1437 Bannock Street<br>Denver, CO 80202<br>(720) 865-8301 | |
| **Plaintiff(s):** LSF9 Master Participation Trust<br><br>v.<br><br>**Defendant(s):** James P. Tatten, and Any and all other occupants claiming an interest under the Defendants. | ▲   **COURT USE ONLY**   ▲ |
| **Party Without Attorney:**<br>James P. Tatten<br>8681 East 29th Avenue<br>Denver, Colorado 80238<br>Phone: (720) 256-3686<br>E-mail: jimtatten@legislativebasecamp.com | Case Number: 2018CV000336<br><br>Division:  209<br><br>Courtroom: |
| **SUPPLEMENT TO MOTION TO STOP PROCEEDINGS AND FOR ORDER TO VACATE AND CORRECT ORDER** | |

COMES NOW, *pro se* Defendant, James P. Tatten ("Tatten"), and files Affidavit and Testimony of Private Investigator William J. Paatalo.  The attached Affidavit and Testimony supplement Tatten's Motion to Stop Proceedings and for Order to Vacate and Correct Order Re: Motion for Summary Judgment.

Tatten filed his Motion to Stop Proceedings and for Order to Vacate and Correct Order Re: Motion for Summary Judgment with this Court yesterday, June 17, 2019.

Respectfully submitted this 18th day of June, 2019.

BY: _____

JAMES P. TATTEN
8681 East 29th Avenue
Denver, CO 80238
Phone:  (720) 256-3686
Email: jimtatten@legislativebasecamp.com
*Pro se* Defendant

## CERTIFICATE OF SERVICE    *Supplement To*

I hereby certify that on 18th day of June, 2019, true and correct copies of the Motion to Stop Proceedings and Order to Vacate and Correct Order Re: Motion for Summary Judgment and Verified Statement were served, via electronic transmission, to Plaintiff LSF9 Master Participation Trust at the following email addresses:

- Albert Frazier          afrasier@McCarthyHolthus.com

- Evictions              evictions@mccarthyholthus.com

- Holly Shilliday         hshilliday@mccarthyholthus.com

- Unknown              IDSMH@McCarthyHolthus.com

DATED: June 18, 2019.

BY: _James P. Tatten_

JAMES P. TATTEN
8681 East 29th Avenue
Denver, CO 80238
Phone:  (720) 256-3686
E-mail: jimtatten@legislativebasecamp.com
*Pro se* Defendant

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER STATE OF COLORADO**<br><br>1437 Bannock Street<br>Denver, Colorado 80202<br>(720) 865-8301 | **▲ COURT USE ONLY ▲** |
| **Plaintiff(s):** LSF9 Master Participation Trust<br><br>v.<br><br>**Defendant(s):** James P. Tatten, and any and all other occupants claiming an interest under the Defendants. | Case No.: 2018CV000336<br><br>Division:        209<br><br>Courtroom: |

## AFFIDVIT AND TESTIMONY OF
## PRIVATE INVESTIGATOR WILLIAM J. PAATALO

BEFORE ME this day personally appeared William J. Paatalo, who, being first duly sworn and taking an oath, deposes and says as follows:

1.      I am an Oregon licensed private investigator under ORS 703.430, and have met the necessary requirements under ORS 703.415. My Oregon PSID number is 49411.

2.      I am over the age of eighteen years, am of sound mind, having never been convicted of a felony or a crime or moral turpitude. I am competent in all respects to make this Affidavit. I have personal knowledge of the matters declared herein, and if called to testify, I could and would competently testify thereto.

1. Affidavit of Private Investigator – William J. Paatalo

DEFENDANT'S EXHIBIT

3.      I have 17 years combined experience in law enforcement and private investigation with concentration on the mortgage lending industry and enforcement actions seeking foreclosure of title or enforcement of possession.  My Resume ("CV") is attached as "**Exhibit 1**."

4.      I have worked exclusively over the last 8 – years and more than 15,000 hours conducting investigatory research and interviews related to mortgage securitization and chain of title analyses. Typically my investigations are at the request of a homeowners or their counsel with the objective of determining whether there are facts that corroborate both the actual assertions and implied statements contained in various documents that purport to transfer, deliver or otherwise imply possession or ownership of a debt, note or mortgage (deed of trust in nonjudicial states).

5.      I have performed such analyses for residential real estate located in many states, including, but not limited to Washington, Oregon, California, Arizona, Nevada, Florida, Ohio, Montana, New Jersey, Illinois, and numerous other states.

6.      As of this date, I have conducted more than 1,200 investigations.

7.      Because of my education and experience I am familiar with and have sufficient training and expertise to qualify as an expert, and I have testified as an expert in state and federal judicial proceedings in various jurisdictions throughout the United States.

8.      Most recently, I testified at trial as an expert witness on August 6, 2018 in Re: _PennyMac Holdings, LLC v. Mario Carini, et. al., California Superior Court, County of San Diego, Case No. 37-2017-00039675-CL-UD-CTL._

9.      My specific areas of expertise that have been deemed qualified by the courts are as follows:

2. Affidavit of Private Investigator – William J. Paatalo

- Knowledge of the "Pooling & Servicing Agreements" and various Securities & Exchange Commission (SEC) filings associated with mortgage-backed securitized trusts.

- Specific language in the PSA's and Prospectus / Prospectus Supplements involving securitization participants, key dates, "Servicer Advances," sources of third-party payments, and transfer and conveyancing requirements to name a few.

- Knowledge and use of ABSNet / MBSData and the interpretation of its internal accounting data showing "advance payments" made to the certificate holders / investors, as well as other information specific to accounting, chain of title, and other aspects of securitization.

- Chain of Title analyses based upon publicly recorded documents, documents produced in discovery, and documents attached as exhibits to foreclosure complaints. Documents typically included mortgages, deeds of trust, assignment, notes, and allonges; in addition to documents filed under penalty of perjury with the SEC.

10. I was retained by Defendant to review the chain of title to the Deed of Trust and Note which is the subject of the foreclosure, and to render any opinions regarding defects, deficiencies, or fraud should they exist.

11. The following documents were inspected and marked as exhibits:

**Exhibit 2** – Plaintiff's Motion for Summary Judgment
**Exhibit 3** – Deed of Trust (DOT)
**Exhibit 4** – Assignments of DOT
**Exhibit 5** – IL Consent Decree
**Exhibit 6** – "Notice of Trust Instruction Petition and Court Hearing Date"
**Exhibit 7** – LSF9 Trust Agreement - *Schaeffer*
**Exhibit 8** – Securitization Servicing Agreement – LSF9 Master Participation Trust - *Geronimos*
**Exhibit 9** - Securitization Servicing Agreement – LSF9 Master Participation Trust – Murphy-Pearson
**Exhibit 10** - Limited Power of Attorney – USBank Trust & Caliber

3. Affidavit of Private Investigator – William J. Paatalo

**Exhibit 11** – Trial Transcript – *Bank of America v. Asset Acquisitions & Holdings Trust*

**Exhibit 12** – SEC- ABS15-G Filing – LSF9 Mortgage Holdings, LLC – 2017

**Exhibit 13** – U.S. Bank Corporate Flier

**Exhibit 14** – Articles of Association – U.S. Bank Trust, N.A. - *Schaeffer*

**Exhibit 15** – Certificate of Trust - *Schaeffer*

**Exhibit 16** – Florida Complaint w/ Affidavit & Note – *Crenshaw*

**Exhibit 17** – *Schaeffer* Assignments

**Exhibit 18** – Money Laundering Assessment – 2005

**Exhibit 19** - *U.S. Bank Trust, N.A. v Carpentier*

**Exhibit 20** – Order – *U.S. Bank Trust, N.A. v. Murphy*

**Exhibit 21** – Corporate Web Address – U.S. Bank

**Exhibit 22** – U.S. Bank, N.A. Letter

**Exhibit 23** – Federal Reserve – U.S. Bank Trust, N.A. Ceased 2007

**Exhibit 24** – MLPSA

**Exhibit 25** – FL Banker's Assoc. Comment Letter

**Exhibit 26** – Motion for Lift of Stay – *Lifschultz*

**Exhibit 27** – LPOA - *Lifscultz*

**Exhibit 28** – NY Appellate – *U.S. Bank Trust, N.A. v. Moomey-Stevens*

12.    Having reviewed the documents, it is my professional opinion that the named Plaintiff ("LSF9 MASTER PARTICIPATION TRUST") is not only a misrepresentation and a "sham" entity, it fails to identify any trustee acting on its behalf. In cases I have investigated throughout the U.S., the Trustee for this entity named in judicial actions, and in assignments of the mortgages and deeds of trust, is "U.S. Bank Trust, N.A." However, by its own admission, the actual Trustee for the LSF9 Master Participation Trust is "U.S. Bank, N.A." and NOT "U.S. Bank Trust, N.A." Evidence produced by "U.S. Bank, N.A.," a different entity than "U.S. Bank Trust, N.A.," shows "U.S. Bank, N.A." is the Indenture Trustee for loans held by various undisclosed series trusts to which the LSF9 Master Participation Trust is simply a self-proclaimed agent, and not an entity that holds any assets such as the Tatten DOT and Note. The multitude of securitization

4. Affidavit of Private Investigator – William J. Paatalo

"series" transactions to which "U.S. Bank, N.A." is the Indenture Trustee, as well as the authoritative document(s) for all parties associated with these transactions have been universally inconsistent and intentionally concealed from alleged debtors and the courts.

## EVIDENCE IN SUPPORT OF OPINIONS

**I.     No Trustee has been identified, and as such, it is unclear what party verified the filing of the complaint.**

13.     The Plaintiff has identified itself as "LSF9 Master Participation Trust" without identifying its Trustee. I believe this was done intentionally and for purposes of aligning with the assignments.

**(A)The Assignments are indicia of fraud.**

14.     Two assignments of the DOT have been recorded in the public land records per my research and are attached as **Exhibit 4**. The sequential order of these filings are as follows:

**Assignment #1**
**Execution Date**: May 18, 2011
**Recording Date**: May 23, 2011
**Assignor**: Mortgage Electronic Registration Systems, Inc.
**Assignee**: BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP

**Assignment #2**
**Execution Date**: March 24, 2016
**Recording Date**: April 8, 2016
**Assignor**: Bank of America, N.A. S/B/M BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, by Caliber Home Loans, Inc., its attorney in fact.
**Assignee**: LSF9 Master Participation Trust, 13801 Wireless Way, Oklahoma City, OK 73134-000

5. Affidavit of Private Investigator – William J. Paatalo

15.   MERS executes Assignment #1 in its individual capacity and purports to assign and transfer the DOT and Note "For Value Received." This is deceptive, and is the likely scienter as to why MERS fails to name its principal in the assignment.

16.   It is a well-established legal fact that MERS is only a database and does not handle or transfer notes / debt instruments, nor does it ever possess these documents as a custodian. Many state's attorney generals have issued consent judgments forbidding title document firms and servicers from executing assignments in and out of MERS claiming to transfer and assign the notes. As an example, I've attached as **Exhibit 5** a Final Consent Decree between the Illinois Attorney General against Nationwide Title Clearing on 10/15/2013 which states this fact on P.4,¶f,

*f. Assignments into and out of Mortgage Electronic Registration Systems, Inc. ('MERS') shall not claim that both the mortgage and the note have been assigned when, in fact, only the mortgage has been transferred by the assignment."*

17.   From experience investigating MERS and its business model, MERS itself has taken the position in jurisdictions throughout the United States that it does not handle promissory notes, does not act as a custodian for promissory notes, and does not get involved in the negotiation or transfer of promissory notes. This is evidenced in the case captioned *Montgomery County, PA v. Merscorp, Inc., and Mortgage Electronic Registration Systems, Inc. U.S. District Court, Eastern District of Pennsylvania, Case No. 11-CV-6968*:

"E. MERS as "Nominee"

6. Affidavit of Private Investigator – William J. Paatalo

*The MERS Defendants have repeatedly taken the position that, in commencing the instant action, Plaintiffs sued the wrong parties because "MERS has not and does not negotiate or transfer promissory notes secured by mortgages recorded in Montgomery County, Pennsylvania." (MERS' Memorandum of Law in Support of Their Motion for Summary Judgment, at p. 44)."*

18.   More importantly, Assignment #2 to the Plaintiff not only fails to name the Trustee for the assignee Trust, it also failed to assign and transfer the Note. I am not an expert in the law. However, I am informed by various counsel in similar foreclosure cases that the original note must be present or re-established for enforcement to occur and that I should presume that the language of the Uniform Commercial Code applies in all states when enforcing a mortgage or deed of trust, to wit:

"9-203 - Attachment and enforceability of security interest; proceeds; supporting obligations; formal requisites. (a) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.

(b) Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:

(1) Value has been given;"

19.   Given the likelihood of destruction of the original Note as outlined below, and the absence of corroboration of the implied assertion of a transaction in which the debt was purchased for value, it appears that these preconditions are not satisfied in this case. As an investigator I take the absence of any attempt to re-establish the note to mean that the current parties do not have any evidence of

7. Affidavit of Private Investigator – William J. Paatalo

having purchased the debt for value, to which my investigation has found no such evidence.

**(B) No "Creditor" / Claimant with rights to foreclose the subject DOT can be identified.**

20. The Certificate of Trust for "LSF9 Master Participation Trust" (Exhibit 15) identifies this entity as a Delaware Statutory Trust under 12 Del. C. §3801 et seq.) and is executed by *"U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee of the Trust."*

21. The Plaintiff fails to identify what type of trust it is, as there are many forms of trusts. I believe this is intentionally deceptive.

22. The Delaware Statutory Trust Act (DSTA) states that the trusts are separate legal entities, and no creditor of a beneficial owner has any right to obtain possession of property belonging to the trusts (See: §3805(b)). Furthermore, the DSTA states that a beneficial owner has no specific interest in the property of the trusts (See: §3805(c)).

23. Hence, I cannot identify any claimant in this matter, nor is there any evidence of a trustee acting on Plaintiff's behalf.

24. This appears to contravene the DSTA, as the "Creditor" and the "Beneficial Owner" are different entities, both of whom appear to have no rights or interests in the property of the trust. I need all trust documents and ancillary agreements, including the mortgage loan schedule identifying the subject loan, to complete my investigation.

**II.    U.S. Bank, N.A.," not "U.S. Bank Trust, N.A.," is the self-proclaimed Trustee of the "LSF9 Master Participation Trust."**

25. Though no Trustee has been identified by Plaintiff, the following evidence

8. Affidavit of Private Investigator – William J. Paatalo

1  reveal inconsistencies that are indicia of fraud, or at the very least,

2  misrepresentations. Attached hereto as **Exhibit 6** is a true and correct copy of the

3  *"Notice of Trust Instruction Petition and Court Hearing Date"* (except for Exhibit

4  A therein which list numerous transactions and CUSIP numbers that have been

5  removed for the sake of brevity). I obtained this document upon conducting a

6  "Google Search" from U.S. Bank's corporate website at the web address shown on

7  **Exhibit 21**. I do not know how long U.S. Bank has made this document available

8  online, but it was not easily found.

9     26.   This document reveals the following:

10

11     a.  U.S. Bank, N.A. Petition, Ex. 1, Bates Stamp 132 (entry number 2434 shows
           U.S. Bank, N.A. is the Trustee of LSF9 Master Participation Trust),

12

13     b.  U.S. Bank, N.A. Petition, Ex. 2, Bates Stamp 634 ("Trustee Defendants"
           means U.S. Bank, N.A. as Trustee for various trusts identified in the
           Petition, including LSF9 Master Participation Trust),

14

15     c.  U.S. Bank, N.A. Petition, Ex. 3, Bates Stamp 632 & 759 (shows U.S. Bank,
           N.A. is Trustee of LSF9 Master Participation Trust),

16

17     d.  U.S. Bank, N.A. Petition, Ex. 4, Bates Stamp 863 (shows list of servicers,
           including Caliber Home Loans Inc., Ocwen Loan Servicing LLC, and Bank
           of America, N.A.).

18

19     27.   This information  is consistent with my opinion that "U.S. Bank

20  Trust, N.A." is **NOT** the Trustee for the "LSF9 Master Participation Trust."

21  In addition, as will be explained below, both "U.S. Bank, N.A." and "LSF9

22  Mortgage Holdings, LLC" are absent in the chain of title (COT) to the Tatten

23  DOT.

24     28.   The agreement, signed and acknowledged by "U.S. Bank, National

25  Association" as the Trustee for the LSF9 Master Participation Trust, names the

26  governing instrument for the LSF9 Master Participation Trust as the *"Trust*

27         9. Affidavit of Private Investigator – William J. Paatalo

*Agreement dated as of July 10, 2014 among LSF9 Mortgage Holdings, LLC (Depositor) and Wells Fargo Bank, N.A. (Other Party) relating to the LSF9 Master Participation Trust.*" As explained more in-depth below, I believe this references the same "Trust Agreement" (TA) produced in the *Schaeffer* case in Texas (**Exhibit 7**) and is inconsistent with the Plaintiff's position in other cases.

29.   To further demonstrate that "U.S. Bank <u>Trust</u>, N.A." is not the Trustee of the LSF9 Master Participation Trust, attached as **Exhibit 29** is a letter provided to a client of mine in a New Hampshire case after the same Plaintiff obtained a court judgment declaring this entity the owner of the subject loan. In this letter, "U.S. Bank, N.A." admits that it, **not** "U.S. Bank Trust, N.A.," is the trustee for the trust that owned the loan. A similar letter was also provided in *Schaeffer* and I've attached as **Exhibit 22**.

30.   For additional reasons set forth in this Affidavit, it is my professional opinion that Caliber Home Loans, as the alleged servicer, has no affiliation "in any way" with the actual trustee ("U.S. Bank, N.A.") who is acting as Indenture Trustee for hidden investors for a multitude of undisclosed series trusts, nor is Caliber a servicer for the entity named "LSF9 Master Participation Trust." No document has been produced thus far in any case I am aware showing Caliber's authority to act as a servicing agent for "U.S. Bank, N.A." or any of the various series trusts, nor has any "Trust Agreement" or "Pooling & Servicing Agreement" (PSA) ever been produced for any of these series trusts.

31.   U.S. Bank, N.A. who proclaims to be the Trustee for the same Plaintiff Trust that owned the New Hampshire loan, and logically all others including the subject DOT in this case, is nowhere to be found in the chain of title, nor is it ever named as an interested party in foreclosure proceedings, the creditor in bankruptcy filings, or the beneficiary / mortgagee in public land records. The reason for this

10. Affidavit of Private Investigator – William J. Paatalo

might be simple. Attached as **Exhibit 23** is a screenshot from the Federal Reserve showing the institution "U.S. Bank Trust, N.A." was "Closed – 06/30/2007."

### III.    Missing parties in the chain of title.

32.    From experience investigating "U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust," it is a common occurrence for servicers to "switch hats" in the advanced stages of judicial proceedings by substituting this named Plaintiff or executing assignments to the Plaintiff for purposes of obtaining foreclosure judgments or carrying out non-judicial foreclosure sales. These tactics typically "hamstring" homeowners by obfuscating the identities of the parties and increasing the time and expense to prosecute and/or defend in litigation.

33.    For example, a Plaintiff substitution to "U.S. Bank Trust, N.A., As Trustee for LSF9 Master Participation Trust" occurred in the following case which I was retained to investigate *JPMorgan Chase Bank, N.A. v. Emmanuel Geronimos, et al., SC, J.D. of Stamford/Norwalk, Case No. FST-CV13-6017139-S*

34.    In *Geronimos*, counsel for Plaintiff produced a partial and heavily redacted "Securitization Servicing Agreement" (SSA) in discovery and claimed that this document was the trust's "governing instrument." However, this SSA document contradicts the referenced "Trust Agreement" in the settlement with the City of Los Angeles, as well as the heavily redacted "Trust Agreement" (TA) produced by this same entity in another case I was retained (*Schaeffer v. LSF9 Master Participation Trust, USDC, WD TX Case No. 1:17-cv-297*) (**Exhibit 7**). It is important to point out that no "Trust Agreement" has been produced in this matter. "U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust"

11. Affidavit of Private Investigator – William J. Paatalo

took the position that <u>this specific SSA was the "governing instrument"</u> for the trust. The TA produced in *Schaeffer* was never disclosed for my review in *Geronimos*. And like the SSA document, it too is heavily redacted. Plaintiff's position in *Geronimos* is clearly inapposite and false.

31.     I have reviewed the heavily redacted SSA produced in *Geronimos* which I have attached as **Exhibit 8**. The first page of the document names the parties to the transaction which includes "Caliber Home Loans, Inc." as "Servicer" and identifies "LSF9 Master Participation Trust" "<u>as Participation Agent</u>." The language identifies the LSF9 Master Participation Trust as an **agent**, to which its principal is unclear.

32.     "U.S. Bank Trust, N.A." is absent in this falsely proclaimed "governing instrument" which shows the following on P.2:

<u>SECURITIZATION SERVICING AGREEMENT</u>

This is a SECURITIZATION SERVICING AGREEMENT (the "<u>Agreement</u>"), dated October 28, 2014, by and among VOLT XXVII, LLC, as issuer (the "<u>Issuer</u>"), WELLS FARGO BANK, N.A., as paying agent (the "<u>Paying Agent</u>"), U.S. BANK NATIONAL ASSOCIATION, as indenture trustee (the "<u>Indenture Trustee</u>"), LSF9 MASTER PARTICIPATION TRUST, as participation agent (the "<u>Participation Agent</u>"), and CALIBER HOME LOANS, INC., as servicer (the "<u>Servicer</u>").

33.     The actual Indenture Trustee is identified as "U.S. Bank National Association," which is named as the Trustee on behalf of "VOLT XXVII Asset-Backed Notes, Series 2014-NPL7." In turn, Caliber Home Loans, Inc. is identified as the servicer for the "VOLT XXVII Asset-Backed Notes, Series 2014-NPL7" to which the "Issuer" for this securitization transaction was "VOLT XXVII, LLC."

34.     Not only is the "Issuer" missing in the *Geronimos* chain of title, but U.S. Bank Trust's submission of this highly redacted document in *Geronimos* clearly shows at the bottom of each signatory page that the agreement pertained to

12. Affidavit of Private Investigator – William J. Paatalo

the "VOLT 2014-NPL7," and this securitization transaction to which "U.S. Bank, N.A. as Indenture Trustee" was never disclosed. I believe the same holds true in this matter.

35.    Attached as **Exhibit 26** is a Motion for Stay in the *Lifschultz* case to which I have also been retained. The motion includes a Securitization & Servicing Agreement (*Exhibit C*) that is different from all the others referenced in this Affidavit and will be referred to as "SSA-4." Like the SSA in *Geronimos*, this document is also heavily redacted, but names the series trust as "VOLT XXXVI Asset-Backed Notes, Series 2015-NPL10" with the Indenture Trustee being "U.S. Bank, N.A."

36.    I located an "ABS-15G" filing from February 13, 2017 with the Securities & Exchange Commission" (SEC) for the entity named "LSF9 Mortgage Holdings, LLC" (**Exhibit 12**). The "ABS-15G" states that "LSF9 Mortgage Holdings, LLC" was the "Securitizer" for numerous transactions including "VOLT 2014-NPL7;" the likely investor in the *Geronimos* loan for which U.S. Bank, N.A. is named as the Indenture Trustee for the investors in "VOLT 2014-NPL7," not "U.S. Bank Trust, N.A."

37.    "LSF9 Mortgage Holdings, LLC" as "securitizer" is missing in the chain of title to the *Lifschultz* Mortgage as well as the Tatten DOT. This entity is also missing in the chain of title in the *Geronimos* case as well as the *Crenshaw* and *Murphy* cases I will reference below. To note yet another inconsistency, assignments were produced in the *Schaeffer* case (**Exhibit 17**) transferring the deed to and from "LSF9 Mortgage Holdings, Inc.," the entity named as "Depositor" in the "Trust Agreement" disclosed in the L.A. Settlement.  No such assignments exist in this matter, or any other case referenced in this Affidavit. The L.A. Settlement Agreement clearly shows "U.S. Bank, N.A." as the Trustee for the

13. Affidavit of Private Investigator – William J. Paatalo

LSF9 Master Participation Trust, and the Trust's governing instrument referenced in the agreement names "LSF9 Mortgage Holdings, Inc." as the Depositor. These entities are nowhere to be found in the chain of title to the Tatten DOT.

38.   Attached as **Exhibit 16** is a verified complaint filed in Florida whereby yet another version of a "Securitization Servicing Agreement" (SSA-2) was submitted by the Plaintiff in *U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust" v. Crenshaw, Fifteenth Judicial Circuit for Palm Beach County, Florida*. SSA-2 names the issuing entity trust as being "VOLT XXXIII Asset-Backed Notes, Series 2015-NPL5."

39.   Also attached to the verified *Crenshaw* complaint is an "Affidavit of Ownership" executed by "Jennifer Scott" on behalf of Caliber Home Loans, Inc. Scott's Affidavit in ¶10 states,

"According to Caliber's business records, on or about December 11, 2014, the Loan was sold to the LSF9 Master Participation Trust under the terms of a **Pooling and Servicing Agreement.** Under the Pooling and Servicing Agreement, VOLT XXXIII, LLC, is the issuer (the 'Issuer'), Wells Fargo Bank, N.A., as paying agent (the 'Paying Agent'), U.S. Bank National Association, as indenture trustee (the 'Indenture Trustee'), LSF9 Master Participation Trust, as participation agent (the 'Participation Agent'), and Caliber Home Loans, Inc., as servicer (the 'servicer'). Defendant's loan was included in the pool of loans represented by this Pooling and Servicing Agreement and the Mortgage Loan Schedule thereto is attached hereto as Composite Exhibit B."

40.   The "Pooling and Servicing Agreement" provided in the Scott Affidavit is not a "Pooling and Servicing Agreement," commonly referred to as a "PSA," nor is it the governing instrument referenced in the settlement agreement. It is what it states, a "Securitization Servicing Agreement," which again, is different than SSA-1 produced in *Geronimos*, SSA-3 produced in *Murphy* (below),

14. Affidavit of Private Investigator – William J. Paatalo

and SSA-4 produced in *Lifschultz*. I know this from years of experience reviewing thousands of securitization trust documents. Not only was the "Mortgage Loan Schedule" not included as stated in the Scott Affidavit, the actual PSA was missing and so was the series trust for which U.S. Bank, N.A. was acting as Indenture Trustee. This is deceptive, and a clear misrepresentation. Of note, the assignment of mortgage in Crenshaw (Exhibit 16) gives an entirely different address for the LSF9 Master Participation Trust than the Assignment #2 in this matter – *"2711 N. Haskell Ave, Suite 1700, Dallas, TX 75204."*

41.   Furthermore, the note attached to the Scott Affidavit contains one single direct endorsement from "Great Western Savings" to the "Federal Home Loan Bank of San Francisco." Neither of these entities are named in the complaint. Caliber provided a note directly endorsed to "Federal Home Loan Bank of San Francisco" and then certified it was the "holder" of the note entitled to enforce on behalf of U.S. Bank Trust, N.A. for the LSF9 Master Participation Trust." This makes no sense and is indicia of fraud.

42.   In yet another Florida case I've been retained (*U.S. Bank Trust, N.A. as Trustee for the LSF9 Master Participation Trust v. Murphy, Fifteenth Judicial Circuit, Palm Beach County, FL Case No.: 50-2017-CA-012236*) another version of the so-called trust's governing instrument was recently produced that is different from all the rest. It too is called a "Securitization and Servicing Agreement" which I've attached as **Exhibit 9** which I refer to as "SSA-3." This document names U.S. Bank, N.A. as the Indenture Trustee on behalf of the Issuing Entity – VOLT LX Asset-Backed Notes, Series 2017-NPL7. These entities are not only missing in the *Murphy* chain of title, none are the named Plaintiff.

43.   In Murphy, a recent hearing was held on a motion to compel the complete unredacted version of the "Trust Agreement." Per the Order attached as

15. Affidavit of Private Investigator -- William J. Paatalo

**Exhibit 20**, Plaintiff was given a 10-day deferral to produce the document either under a confidentiality agreement or for *in-camera* review with a due date of February 10, 2019. Pursuant to my client, no document has been produced as of the date of this Affidavit. It is abundantly clear that "U.S. Bank Trust, N.A." is stonewalling the production of the document and all efforts to bring this document to light.

44.    Thus far in the *Geronimos, Crenshaw, Murphy, Lifschultz* and *Schaeffer* cases, "U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust," through its alleged agent Caliber Home Loans has provided inconsistent trust documents claiming each to be the governing instrument for a named trust that is not an actual trust holding any assets as the evidence suggests.

45.    As shown, these inconsistent documents are all heavily redacted, and I am unaware of the reasons or purposes for these redactions. What can be gleaned from the limited amount of information disclosed in the unredacted portions of these documents are (1) they do not align, (2) multiple series of trusts are involved, to which U.S. Bank, N.A., not U.S. Bank Trust, N.A., is the Indenture Trustee, (3) these series trusts are being concealed, (4) there are no schedules identifying any specific loans held as assets for any of these series trusts or the "LSF9 Master Participation Trust," and (5), none of the alleged documents are certified or executed with notarizations. Furthermore, the TA provided in *Schaeffer* references "*Transfer Agreements*," a "*Participation Agreement*," "*Mortgage Asset Sale Agreement or Ancillary Agreement relating to sale of mortgage loans*," and a "*Custodial Agreement*." These documents are being withheld in all cases. If the governing instrument for the LSF9 Master Participation Trust is in fact the TA proffered in *Schaeffer* and referenced in the L.A. Settlement, then it is essential that I review the entire unredacted document, and all ancillary documents, to

16. Affidavit of Private Investigator – William J. Paatalo

complete my investigation. Without access to this information, it is impossible to know the identities of those involved, their authorities provided or derived in any of the alleged transactions, whether the trust(s) are legitimate and hold any assets, and whether any of the parties have any contractual privity to the homeowners in foreclosure actions or any recourse against borrowers to enforce the debt or the security instruments. More importantly, it is impossible to determine if these entities are even real, and not just shell entities designed to hide and conceal the identities of those who may, or may not, have any rights to the Tatten DOT.

46.    The inconsistencies and lack of transparency by the Plaintiff, as well as the concealment of any Trustee or party acting on its behalf in this matter, along with U.S. Bank Trust, N.A.'s total lack of knowledge regarding the identities of any investors as further explained below, suggests there is a possibility of a money laundering. Attached as **Exhibit 18** is a 2005 "_Money Laundering Threat Assessment_" written jointly by the U.S. Treasury, IRS, Office of Terrorist Financing & Financial Crime (TFFC), Financial Crimes Enforcement Network (FinCEN), and other agencies that discusses "Shell Companies & Trusts" in Chapter 8. The following excerpts are taken from this chapter:

"Although trusts have many legitimate applications, they can also be misused for illicit purposes. Trusts enjoy a greater degree of privacy and autonomy than other corporate vehicles, as virtually all jurisdictions recognizing trusts do not require registration or central registries and there are few authorities charged with overseeing trusts. In most jurisdictions, no disclosure of the identity of the beneficiary or the settlor is made to authorities. Accordingly, trusts can conceal the identity of the beneficial owner of assets and, as will be discussed below, can be abused for money laundering purposes, particularly in the layering and integration stages.

Vulnerabilities

17. Affidavit of Private Investigator – William J. Paatalo

Legal entities such as shell companies and trusts are used globally for legitimate business purposes, but because of their ability to hide ownership and mask financial details they have become popular tools for money launderers."

"Several mechanisms operate to provide corporate entities with additional anonymity. Bearer shares are negotiable instruments that accord ownership of a company to the person who possesses the share certificate. Such share certificates do not contain the name of the shareholder and are not registered, with the possible exception of their serial numbers. Accordingly, these shares provide for a high level of anonymity and are easily negotiable."

**IV.    Most "original" mortgage promissory notes created and securitized in the run-up to the financial collapse in 2008, and likely the Tatten Note, were eliminated in lieu of electronic images, and this was "standard in the industry."**

47.    The whereabouts of the "original" Tatten Note is unknown, as MERS could not / did not transfer the Note in Assignment #1. And, Assignment #2 to Plaintiff failed to transfer the Note.

48.    Attached as **Exhibit 33** is a comment letter written on behalf of the Florida Banker's Association to the Florida Supreme Court in 2009 where it was posited that original mortgage notes were deliberately eliminated and replaced with electronic files, and that this was "standard in the industry."

*The reason "many firms file lost note counts as a standard alternative pleading in the complaint" is because the physical document was deliberately eliminated (e.s.) to avoid confusion immediately upon its conversion to an electronic file. See State Street Bank and Trust Company v. Lord, 851 So. 2d 790 (Fla. 4th DCA 2003). Electronic storage is almost universally acknowledged as safer, more efficient and less expensive than maintaining the originals in hard copy, which bears the concomitant costs of physical indexing, archiving and maintaining security. It is a standard in the industry (e.s.) and becoming the benchmark of modern efficiency across the spectrum of commerce—including the court system.*

18. Affidavit of Private Investigator – William J. Paatalo

49. This language is used routinely in the buying and selling of securitized mortgage loans and non-performing loans in the secondary markets and to debt buyers.

50. Adding more convolution to the mix, attached to **Exhibit 24** as *Exhibit D* is a Mortgage Loan Purchase & Sale Agreement (MLPSA) produced in *Lifschultz* that involves LSF9 Mortgage Holdings, Bank of America, and Countrywide Home Loans, and involves the purchase of collateral files earmarked for the LSF9 Master Participation Trust. I will address the MLPSA further below.

51. The MLPSA names the following parties in the purchase agreement:

### MORTGAGE LOAN PURCHASE AND SALE AGREEMENT

This Mortgage Loan Purchase and Sale Agreement is made and entered into as of March 27, 2015 (the "Agreement"), by and among LSF9 Mortgage Holdings, LLC (the "Purchaser"), and Bank of America, National Association ("BANA"), Bank of America California, National Association, BofA Merrill Lynch Asset Holdings, Inc. and Countrywide Home Loans, Inc., together with their respective successors and assigns (each, a "Seller," and collectively, the "Sellers").

52. The following snippets were taken from the MLPSA regarding the collateral files and the endorsements of notes by the "Purchaser."

**Section 2.03   Delivery of Collateral Documents.** Each Seller shall have delivered to the Custodian, as soon as practicable but in any event prior to the Closing Date, the Collateral File or an attorney bailee letter (certifying that certain Collateral Documents are in the possession of the attorney as bailee) for each Mortgage Loan being sold by it hereunder for inspection pursuant to the Bailee Letter. All fees and expenses of the Custodian for such inspection shall be paid by the Purchaser. Upon payment of the Purchase Proceeds on the Closing Date, the Sellers shall release to the Purchaser the related Collateral Files in accordance with the Bailee Letter and all documents subject to any attorney bailee letter. Purchaser shall be solely responsible for arranging for the retention of the Collateral Files relating to the Mortgage Loans purchased by it hereunder after the Closing Date.

The Purchaser acknowledges that the Sellers may deliver (i) a Mortgage Note for which the chain of endorsements is not identical to that of the intervening assignments of Mortgage with respect to such Mortgage Note, which shall not affect the enforceability of such Mortgage Note, and/or (ii) intervening assignments of Mortgage which are not identical to the chain of endorsements with respect to such Mortgage Note, which shall not affect the validity of such intervening assignments of Mortgage. Furthermore, the Purchaser acknowledges that any of the foregoing documents may be executed or issued electronically, as customary in the industry, and are considered to be original documents.

19. Affidavit of Private Investigator – William J. Paatalo

And,

Section 2.04 **Power of Attorney**. Promptly following the Closing Date, each Seller shall provide to the Purchaser's servicer limited powers of attorney in such amount as reasonably requested by the Purchaser or the Purchaser's servicer and in such form as Sellers have previously provided to the Purchaser's servicer to permit the Purchaser's servicer on behalf of the Purchaser to prepare and record Assignments to the Purchaser's designee and prepare endorsements to Mortgage Notes to the Purchaser's designee.

53.   This language tacitly discloses that the Seller is selling mortgages and notes that may have defective chains of title by virtue of conflicting note endorsements and assignments. Even more relevant is the fact that the *"Purchaser acknowledges that any of the foregoing documents may be executed or issued electronically, as customary in the industry, and are considered to be original documents."* This suggests that the original notes were not included in the sale, and their whereabouts are unknown. I believe a similar MLPSA exists in this case but is being concealed.

54.   To cover up the defects and deficiencies that Purchaser "LSF9 Mortgage Holdings, LLC." acknowledged in the sale transaction, "Power of Attorney" authority was granted to the Purchaser to correct the deficiencies, including the endorsement(s) of the imaged copies of notes. Attached as **Exhibit 27** is the LPOA document recorded in conjunction with the assignment in *Lifschultz*. The LPOA states in ¶3, *"Correct or otherwise remedy any errors or deficiencies contained in any transfer or reconveyance documents provided or prepared by Seller or a prior transferor, including but not limited to note endorsement[s; "]* It is important to note that Assignment #2 in this matter is executed by Caliber as attorney-in-fact for Plaintiff, yet there is no reference to any LPOA document granting such authority.

20. Affidavit of Private Investigator – William J. Paatalo

55. The LPOA references the MLPSA and the rights bestowed upon Caliber Home Loans, Inc. as servicer for the Purchaser – LSF9 Mortgage Holdings, LLC. Again, this entity is nowhere in the chain of title and is being concealed.

56. Attached as **Exhibit 28** is a recent appellate decision handed down against "U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust" in the matter, _U.S. Bank Trust, N.A. v Moomey-Stevens 2019 NY Slip Op 00016 Decided on January 3, 2019_. The court recognized Plaintiff's failure to provide discovery into the issues I have outlined in this affidavit.

_Defendants also specifically sought discovery with respect to when plaintiff took physical possession of the original note, from what entity it received it, what it paid for same, as well as "a first generation copy of the original [n]ote and all original [a]llonges to the note" and "evidence of the physical transfer of the original [n]ote from origination to its current location." Plaintiff, however, failed to provide any discovery prior to filing its motion for summary judgment. Accordingly, inasmuch as the proof submitted was not sufficient to establish that plaintiff had standing through assignment or actual physical possession of the note at the time it commenced the instant mortgage foreclosure action, plaintiff failed to demonstrate its entitlement to summary judgment. Rather, Supreme Court should have compelled plaintiff's disclosure of the original note pursuant to defendants' discovery request prior to granting plaintiff's motion for summary judgment[t.]_

57. I need to review a complete custodial history for the Note by the party alleging to hold the "original" Note to complete my investigation.

**V.     Evidence shows no agency between U.S. Bank Trust, N.A., the LSF9 Master Participation Trust, and Caliber Home Loans.**

21. Affidavit of Private Investigator – William J. Paatalo

58.   The TA proffered in *Schaeffer* makes no reference to Caliber Home Loans, Inc. The only connection between U.S. Bank Trust, N.A., the LSF9 Master Participation Trust, and Caliber is a commonly used Limited Power of Attorney document dated August 5, 2014 which I have attached as **Exhibit 10**. This LPOA has not been produced in any of the cases I am involved.

59.   However, this LPOA was scrutinized and rejected in the case *Bank of America v. Asset Acquisitions & Holdings Trust, 20 Judicial circuit, Lee County, FL, Case No. 15-CA-50496.* Per the trial transcript (**Exhibit 11**),

*THE COURT: If you have a witness from U.S. Bank Trust, bring him in.*
*MR. TAYLOR: Well, Your Honor –*
*THE COURT: That's the problem, you don't, because you have not proven up your power of attorney giving Caliber the authority to be in court today on behalf of U.S. Bank. Motion is granted.*

60.   The LPOA document states in the upper left corner of page-1 that it was prepared by Caliber, and Caliber testified in the referenced trial that it did in fact create and execute the document.

61.   The LPOA states, *"This Limited Power of Attorney is being issued in Connection with Servicer's responsibilities to service certain mortgage loans (the 'Loans') held by the Trustee."* First, the TA does not identify any loans, including the Tatten loan, or the *Lifschultz, Crenshaw, Geronimos,* or *Schaeffer* loans, and does not identify Caliber in any way. Second, the LPOA states that *"U.S. Bank Trust, N.A."* is *"a national banking association organized and existing under the laws of the United States and having an office at 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107."* This is a misrepresentation and is deceptive. The Certificate of Trust filed in the State of Delaware (**Exhibit 15**) states that "U.S. Bank Trust, N.A." is a Delaware Trustee with its place of business being <u>in</u>

22. Affidavit of Private Investigator – William J. Paatalo

<u>Delaware</u>. And third, the LPOA states that U.S. Bank Trust, N.A. is acting *"not in its individual capacity but solely as Trustee ('Truste[e.'")]* This statement misrepresents "U.S Bank Trust, N.A.'s" legal title which is described in its own Certificate of Trust as *"U.S. Bank Trust, N.A. not in its individual capacity but solely as **Owner Trustee** of the Trust,"* and in my opinion shows a pattern of misrepresentation.

## VI.   U.S. Bank Global Trust Services denies agency with loan servicers.

62.   Casting further doubt as to Calibers' agency with U.S. Bank Trust, N.A., per the LPOA, U.S. Bank states in its public Global Trustee Services flier (**Exhibit 13**), which I retrieved from U.S. Bank's own public website,

"The trustee does not designate the loan servicers, nor are the loan servicers agents of the trustee."

(*See*: https://www.usbank.com/pdf/community/role-of-trustee-sept2013.pdf)

63.   Though the LPOA states Caliber will service loans *"held by the Trustee,"* U.S. Bank, N.A. being the actual Trustee is not named in the LPOA.

64.   It appears that whenever borrowers or courts seek to determine the authorities granted to Caliber Home Loans, or other servicers, on behalf of the LSF9 Master Participation Trust, nothing is ever produced to prove such authority. Such was the case last summer in *U.S. Bank Trust, N.A. v Carpentier 2018 NY Slip Op 50629(U) Decided on May 1, 2018 Supreme Court:*

Here, plaintiff has submitted the affidavit of David Nilsen to establish its standing. Nilsen does not list his job title but does state that, "[i]n the regular performance of [his] job functions, [he is] familiar with [the] business records maintained by Caliber . . . , as attorney in fact and servicer for [plaintiff] for the purpose of servicing mortgage loans." According to Nilsen, "Wells Fargo Bank, N.A., the

23. Affidavit of Private Investigator – William J. Paatalo

Custodian for [plaintiff,] received physical possession of the note on December 8, 2015, which is memorialized by the assignment of mortgage dated January 12, 2016 from Beneficial . . . to [plaintiff]." Plaintiff has also submitted a copy of the note — with an allonge endorsed to plaintiff from Caliber as attorney in fact for Beneficial and an allonge endorsed to blank from Caliber as attorney in fact for Beneficial — as well as copies of the [*3]mortgage and the assignment of mortgage.

With that said, plaintiff has failed to submit the power of attorney and servicing agreement whereby it has authorized Caliber to act as its attorney in fact and servicer (compare Bank of NY Mellon v Rutkowski, 148 AD3d at 1342). It is therefore unclear what — if any — authority Nilsen had to execute an affidavit in support of the motion. Plaintiff has also failed to submit any documents whereby Wells Fargo Bank, N.A. (hereinafter Wells Fargo) is authorized to act as custodian for plaintiff. As a result, it is unclear whether plaintiff received physical possession of the note as Nilsen asserts. Indeed, while Nilsen indicates that transfer of the note was somehow memorialized by the assignment of mortgage, the assignment contains no reference whatsoever to the note. Rather, it transfers only the mortgage and, as such, is a nullity (see Merritt v Bartholick, 36 NY at 45; U.S. Bank, N.A. v Collymore, 68 AD3d at 754 [2009]; Kluge v Fugazy, 145 AD2d at 538). Finally, plaintiff has failed to establish that it remained in possession of the note at the time of commencement of the action — Nilsen makes no statement whatsoever in this regard (see Bank of Am., N.A. v Kyle, 129 AD3d 1168, 1169-1170 [2015]; Wells Fargo Bank, NA v Ostiguy, 127 AD3d at 1377; compare Green Tree Servicing LLC v Bormann, 157 AD3d 1112, 1115 [2018]; Bank of NY Mellon v Rutkowski, 148 AD3d at 1342).[FN1] Under the circumstances, plaintiff has entirely failed to demonstrate its standing and that aspect of its motion seeking summary judgment as against defendant is denied.

65.   Attached as *Exhibit A* to **Exhibit 26** is a hearing transcript in *Lifschultz* dated February 2, 2018 in which counsel for the same Plaintiff gives a confusing response to the Court's question regarding the agency as follows:

24. Affidavit of Private Investigator – William J. Paatalo

23

24

25

MS. SCHIAVO: That's correct. Servicer, yes.

66. I have seen no evidence to support this statement, nor do I believe this to be an accurate statement.

67. In conclusion, and for the reasons set forth above, it is my opinion that the Plaintiff in this matter ("LSF9 Master Participation Trust") failed to identify any Trustee or provide any proof of its actual legal existence. The named Plaintiff is a misrepresentation and "sham" entity that holds no assets, including the Tatten DOT or original Note. As such, a fraud is being perpetrated upon this Court.

**Further affiant sayeth not.**

By: _William J. Paatalo_
William J. Paatalo

State of Montana
County of Flathead

This instrument was acknowledged before me on June 18, 2019 by William J. Paatalo.

_(Signature of notarial officer)_

(Seal, if any)

CHANEL TIMMONS
NOTARY PUBLIC for the
State of Montana
Residing at Kalispell, Montana
My Commission Expires
February 14, 2022
SEAL

25. Affidavit of Private Investigator – William J. Paatalo

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

26. Affidavit of Private Investigator – William J. Paatalo

# ATTACHMENT TWO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01603-RBJ-NYW

JAMES P. TATTEN,

      Plaintiff,

v.

THE CITY AND COUNTY OF DENVER, a municipality; CLERK AND RECORDER DEBRA JOHNSON, in her official capacities; and LSF9 MASTER PARTICIPATION TRUST,

      Defendants.

---

## DISCLOSURE STATEMENT

---

Pursuant to Federal Rule of Civil Procedure 7.1, Defendant LSF9 Master Participation Trust, by and through its trustee U.S. Bank Trust, N.A., respectfully makes the following disclosure:

      1.      U.S. Bank Trust, N.A. is a national banking association whose Articles of Association designate the location of its main office as Wilmington, Delaware.  U.S. Bank Trust, N.A. is a wholly-owned subsidiary of U.S. Bancorp.  No publicly-held corporation owns 10% or more of U.S. Bank or U.S. Bancorp stock.

      2.      LSF9 Master Participation Trust is a Delaware Statutory Trust.  It has no parent corporation and no publicly-held corporation owns 10% or more of LSF9 Master Participation Trust.

      3.      A supplemental disclosure statement will be filed upon any change in the information provided herein.

133474753 1

DATED:  November 7, 2016

Respectfully submitted,

**PERKINS COIE** LLP

By:  *s/ Alexander H. Bailey*

    Alexander H. Bailey
    Daniel Graham
    Lindsey Dunn
    1900 Sixteenth Street, Suite 1400
    Denver, CO 80202-5255
    Telephone:  303.291.2300
    Facsimile:  303.291.2400
    ABailey@perkinscoie.com
    DGraham@perkinscoie.com
    LDunn@perkinscoie.com

    *Attorneys for Defendant*
    *LSF9 Master Participation Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Tracy Anne Davis
Tracy.Davis@denvergov.org

Benjamin Todd Figa
benjamin.figa@denvergov.org

Patrick A. Wheeler
patrick.wheeler@denvergov.org

and I hereby certify that I have sent via email and United States Mail, postage prepaid to:

James P. Tatten
8681 East 29th Avenue
Denver, CO 80238
jimtatten@legislativebasecamp.com


*s/ Alexander H. Bailey*
Alexander H. Bailey

# ATTACHMENT THREE

| DISTRICT COURT, DENVER COUNTY, COLORADO 1437 BANNOCK STREET, RM 256, DENVER, CO 80202 | DATE FILED: February 18, 2016 9:00 AM |
|---|---|
| In the Matter of the Application of LSF9 MASTER PARTICIPATION TRUST for an Order Authorizing the Public Trustee of DENVER County Colorado, to Sell Certain Property Under a Power of Sale Contained in a Deed of Trust. | ▲ Court Use Only ▲ |
| Attorneys:<br>Janeway Law Firm, P.C.<br>9800 S. Meridian Blvd., Suite 400<br>Englewood, CO 80112<br>Phone No: (303) 706-9990<br>Fax No: (303) 706-9994<br>Atty Reg#15592 Lynn M. Janeway (lynn@janewaylaw.com)<br>Atty Reg#16092 Elizabeth S. Marcus (lizmarcus@janewaylaw.com)<br>Atty Reg#40042 David R. Doughty (david@janewaylaw.com)<br>Atty Reg#43658 Eve M. Grina (evegrina@janewaylaw.com)<br>Atty Reg#34531 Alison L. Berry (alisonberry@janewaylaw.com)<br>Atty Reg#46592 Nicholas H. Santarelli (nicksantarelli@janewaylaw.com)<br>Atty Reg#46915 Kelly Murdock (kellymurdock@janewaylaw.com)<br>Atty Reg#36637 Sheila J. Finn (sheilafinn@janewaylaw.com) | Case No:<br><br>Div:     Courtroom: |

## MOTION FOR ORDER AUTHORIZING SALE

1.      LSF9 MASTER PARTICIPATION TRUST ("Applicant") is the holder of an evidence of debt pursuant to C.R.S. 38-38-100.3 (the "Evidence of Debt"), and deed of trust containing the power of sale in the original amount of $406,192.00, executed by Grantor(s) JAMES P. TATTEN dated March 3, 2004 and recorded March 18, 2004 at reception number 2004072532 in the real property records of Denver County, Colorado (the "Deed of Trust"). Copies of the following documents are attached hereto and incorporated herein: Evidence of Debt, Deed of Trust, Loan Modification, which may include client required redaction of loan account numbers.

2.      The Deed of Trust contains a power of sale to the Public Trustee of the County in which the property is located. Applicant is entitled to foreclose the lien of the Deed of Trust and to have the property described therein sold by the Public Trustee pursuant to statute because the covenants of the Deed of Trust have been violated as follows:  Violations including, but not limited to, the failure to make timely payments as required under the Deed of Trust.

3.      The property to be sold is described as follows:
LOT 5, BLOCK 3, STAPLETON FILING NO. 5, CITY AND COUNTY OF DENVER, STATE OF COLORADO.

Purported Address: 8681 EAST 29TH AVENUE, DENVER, CO 80238

4.      The names of: (a) Grantor(s); (b) those persons who appear to have acquired a record interest in such property subsequent to the recording of the Deed of Trust and prior to the

recording of the Notice of Election and Demand for sale thereunder; (c) the current record owner of such property; and (d) any person known or believed by Applicant to be personally liable upon the Evidence of Debt secured by the Deed of Trust or otherwise interested in this proceeding, as well as the address of each such person as such address is given in the recorded instrument evidencing such person's interest (and as to those persons described in (a), (c), and (d) above, their last known addresses as shown by Applicant's records) are shown on the "Mailing List" attached hereto and incorporated herein by this reference.

5.      Venue for this proceeding is proper because the encumbered property is situated in Denver County, State of Colorado.

6.      Applicant, through its undersigned counsel, checked the website maintained by the Department of Defense (Defense Manpower Data Center) and found no record that the persons obligated on the Note, the Grantors of the Deed of Trust, or the owners of the property, are on active duty or entitled to the protections afforded under the Servicemembers Civil Relief Act, 50 U.S.C. App §§ 501-596 (2003).

WHEREFORE, Applicant requests that this Court enter the Order authorizing a Public Trustee's sale under the power contained in the Deed of Trust.

VERIFICATION

The undersigned hereby affirms that the facts set forth herein are true and correct based on his/her personal review of Applicant's business records regarding this loan provided to the undersigned at referral.

Attorneys for LSF9 MASTER PARTICIPATION TRUST

JANEWAY LAW FIRM, P.C.

Lynn M. Janeway #15592
David R. Doughty #40042
Eve M. Grina #43658
Elizabeth S. Marcus #16092
Alison L. Berry #34531
Nicholas H. Santarelli #46592
Kelly Murdock #46915
Sheila J. Finn #36637

Subscribed and affirmed before me in Douglas County, State of Colorado on 2|12|16

Seal/ Commission expiration date 9|16|16

(Notary's official signature)

Address of Applicant: 13801 Wireless Way, Oklahoma City, Oklahoma 73134

Public Trustee Sale # 2016-0063   JLF No. 15-008932

LAURA LEWIS-WAFFORD
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20044030177
MY COMMISSION EXPIRES SEPTEMBER 16, 2016

# ATTACHMENT FOUR

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 19-cv-00039-NYW

LSF9 MASTER PARTICIPATION TRUST,

      Plaintiff,

v.

JAMES P. TATTEN, and any and all Occupants claiming an interest under the Defendants

      Defendants.

---

**PLAINTIFF'S MOTION TO REMAND FORCIBLE ENTRY AND DETAINER CASE
PURSUANT TO 28 USCS §1447**

---

Plaintiff LSF9 Master Participation Trust ("LSF9" and/or "Plaintiff"), through counsel, McCarthy and Holthus LLP, hereby moves the Court for an order remanding this forcible entry and detainer proceeding back to the Denver County District Court pursuant to 28 U.S.C.S. 1447.

**I.**     **CERTIFICATION**

Undersigned counsel certifies that she attempted to confer with defendant James Tatten ("Tatten") regarding the relief sought in this motion but he has been unresponsive. Counsel e-mailed and telephoned defendant James Tatten ("Tatten"). Although Tatten has previously responded to e-mails and calls, he has not responded to the last four e-mails and two voice-mails left for him. It is anticipated Tatten will oppose the motion.

**II.**     **INTRODUCTION**

Tatten's removal of this forcible entry and detainer action is a continuation of his repeated and unfounded attacks on a lawfully completed foreclosure sale and was filed to further hinder

1

and delay Plaintiff from obtaining possession of the single family residence at 8681 East 29th Avenue, Denver, CO 80238 (the "Property") which it now owns.  As set forth below, the case should be remanded to the Denver County District Court as removal was untimely, there is no subject matter jurisdiction and the United States Supreme Court denied Tatten's petition for writ of certiorari with respect to the dismissal of Tatten's claims against Plaintiff relating to the foreclosure sale.

### III.   BACKGROUND FACTS

#### A.  State Court Procedural History

On June 19, 2018, Plaintiff filed a forcible entry and detainer action (the "FED Action") in the Denver County Court following the completion of a non-judicial foreclosure sale of the Property in June 2016, and the completion of litigation and appeals relating thereto.  [Docket No. 3]  Tatten was served by posting and mailing the summons and complaint on June 22, 2018.  Attached hereto as Exhibit 1 is a true copy of the Affidavit of Mailing and Posting.  Tatten filed his original answer and counterclaims in the FED Action on June 28, 2018.  Following the transfer of the FED Action to the Denver County District Court from the County Court, Tatten amended the Counterclaims on July 5, 2018. [Docket No. 6]

Plaintiff filed a motion to dismiss Tatten's counterclaims in July, 2018.  Tatten opposed the motion.  By order entered October 30, 2018, the district court dismissed the counterclaims with prejudice. [Docket No. 8]

Tatten filed a motion to extend time to reconsider the dismissal of his counterclaims on November 13, 2018, and filed an amended motion a day later.  The district court denied the amended motion for an extension on December 17, 2018. [Docket No. 9] Tatten alleges the denial

is the document forming the basis of the removal. The order cites to both federal and state cases as to why the *pro se* status of Tatten (erroneously listed as Plaintiff) does not affect his obligations to follow court orders and that Tatten must abide by the rules of procedure and court-imposed deadlines. Tatten never filed a motion for reconsideration.

Plaintiff filed a Notice to Set Trial on December 18, 2018. The Notice of Removal was filed on January 7, 2019, after Plaintiff obtained available trial dates from the court but before the trial date was set. The Notice of Removal again challenges the validity of the non-judicial foreclosure sale, alleges LSF9 and its attorneys are debt collectors and claims Tatten's civil rights have been violated because he is disabled. While Tatten did file a handful of documents with his Notice of Removal, he failed to include all of the documents including the certificates of service, motions and orders. Attached hereto as Exhibit 2 is a true and correct copy of the Denver County District Court docket in the FED Action.

B. **Prior Federal Court Litigation against Plaintiff and the City and County of Denver.**

Tatten previously filed a lawsuit against Plaintiff and the City and County of Denver in the United States District Court, District of Colorado, Case No. 1:16-CV-01603-RBJ-NYW (the "Federal Action"). The Complaint in the Federal Action included claims for: (1) violation of due process under 42 U.S.C. § 1983; (2) violation of equal protection; (3) unconstitutional policies and practices; (4) discrimination based upon disability; (5) violation of the Fair Debt Collection Practices Act; and (6) intentional infliction of emotion distress. The claims related to Plaintiff's efforts to complete the non-judicial foreclosure of the Property. This Court dismissed the claims in the Federal Action, with prejudice. The dismissal was affirmed by the Tenth Circuit. A copy of the Order and Judgment by the Tenth Circuit is attached hereto as Exhibit 3. Relevant to the

3

removal and this motion, the Tenth Circuit declined to extend the liberal-construction rule afforded typical *pro se* litigants because Tatten is an attorney representing himself. The Tenth Circuit determined the district court did not err in failing to accord Tatten the liberal construction afforded *pro se* litigants. [Exhibit 3, pages 5-6]

On January 7, 2019, the United States Supreme Court denied Tatten's petition for a writ of *certiorari*. Attached hereto as Exhibit 4 is a true and correct copy of the docket from the United States Supreme Court in Case No. 18-595. Accordingly, the judgment dismissing Tatten's claims relating to the foreclosure and alleged violations of his rights is now final.

## IV.   LEGAL ARGUMENT

### A. <u>Requirements for Removal and Remand.</u>

Removal of a civil action is governed by 28 U.S.C. §1446 (a). A defendant desiring to remove a state court civil action to the federal district court pursuant to Section 1446 must file a notice of removal in the federal district court, containing the grounds for removal and copies of all process, pleadings, and orders served upon the defendant seeking removal. Section 1446 further requires the notice of removal to be filed within thirty (30) days after the service of the summons upon the defendant or thirty (30) days after service of a pleading, motion or order whereby the party first ascertains the case is removable. 28 U.S.C. 1446(b). The thirty day deadline is strictly construed. *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2005). To be removable, the action must satisfy the requirements for federal jurisdiction. 28 U.S.C. § 1441. The removing party has the burden of establishing federal jurisdiction. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

28 U.S.C. § 1447 describes the procedure after a lawsuit has been removed.   Section 1447(c) states that a motion to remand on the basis of any defect other than subject matter jurisdiction must be filed thirty (30) days after removal under Section 1446(a).   If the grounds for remand is lack of subject matter jurisdiction, then remand may occur any time before entry of a final judgment.   28 U.S.C. § 1447(c).

## B.   Remand of the FED Action is Warranted Because Tatten Failed to File his Notice of Removal in Accordance with 28 U.S.C. § 1446.

Tatten's notice of removal does not comply with 28 U.S.C. § 1446 because it was filed more than thirty (30) days after service of the Summons and Complaint on Tatten in the FED Action.   Therefore, remand is appropriate and warranted because the removal was untimely.   *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).   "The failure to comply with these express statutory requirements for removal can fairly be said to render the removal 'defective' and justify a remand."   *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1253 (11th Cir.1999). In addition, Tatten failed to file all process, pleadings, and orders with the Court as required under the statute.

The Complaint in the FED Action was filed on June 19, 2018, and does not seek money damages against Tatten.   Instead, Plaintiff seeks a judgment for possession of the Property.   Tatten was served with the Summons and Complaint by posting and mailing on June 22, 2018 [Exhibit1] Thereafter, he filed his Amended Verified Answer and Counterclaims on July 5, 2018.   Inasmuch as the removal of the FED Action was filed over six (6) months after Tatten was served, the notice of removal is untimely.   *See Kruger v. Kissinger*, 37 F.Supp.3d 1200 (D. Colo. 2014) (case remanded because removal was filed three months after defendant's receipt of the amended complaint).   Unlike the removal, Plaintiff's motion for remand is timely as it was filed within thirty

days of the improper removal.  Accordingly, Plaintiff requests the Court to remand the FED Action back to the Denver County District Court pursuant to 28 U.S.C. § 1447(c).  *See Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 128 (1995) (untimely removal is precisely the type of removal defect contemplated by Section 1447(c)).

C.  **The Court Lacks Subject Matter Jurisdiction Over This FED Action**.

Tatten has not asserted any facts or made any representations to demonstrate federal jurisdiction in this matter.  This is a state court eviction proceeding based upon a single claim for forcible entry and detainer pursuant to Colo. Rev. Stat. § 13-40-104(f).  There is no federal question, and Tatten has not established facts to show that the federal court has jurisdiction pursuant to diversity jurisdiction.  Rather, this is a state court matter, involving state court claims based entirely on Colorado law.  As such, this Court lacks subject matter jurisdiction.

In order to circumvent the requirements of 28 U.S.C. § 1446, Tatten attempts to manufacture subject matter jurisdiction by alleging the order denying his request for an extension somehow violated his civil rights, thereby leading to a federal question.  For good measure, he also throws in allegations relating to his prior dismissed claims in the Federal Action, his counterclaims dismissed by the Denver County District Court, his petition to the United States Supreme Court and statements regarding diversity jurisdiction.   The Court should reject these conclusory statements.

Tatten makes general, broad statements regarding jurisdiction.  The allegations in his Notice of Removal resemble the allegations in the counterclaims he asserted in the FED Action which were dismissed by the Denver County District Court.  The problem with relying on the counterclaims is two-fold.  First, removal is permitted only where the existence of the claim

6

appears on the face of a well-pleaded complaint. *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 830 (2002). A removing party cannot rely on its own counterclaims as a basis for removal. *Wrought v. King*, 2015 U.S. Dist. Lexis 882 (D. Colo. 2015), *citing Vornado Air* at 830. Second, even if Tatten could rely on his own pleadings, Tatten clearly had knowledge of his counterclaims when he asserted them on July 5, 2018. Accordingly, the removal of the FED Action more than six months after filing his counterclaims demonstrates the removal is untimely.

Tatten cannot gain federal jurisdiction by referencing his petition to the United States Supreme Court. First, the Court denied his petition thereby making the dismissal of his claims in the prior federal court lawsuit final. In other words, Tatten can no longer attack the validity of the foreclosure sale. Second, the petition before the Supreme Court is not the FED Action. It is a separate action. Similarly, reciting provisions in the United States Constitution does not somehow transform the FED Action into a federal case.

With respect to diversity jurisdiction, Tatten makes conclusory statements regarding the amount in controversy. On pages 7-8, the amount in controversy apparently is based on his counterclaims and not from the Complaint in the FED Action. Yet, there are no factual allegations regarding the amount of damages in the counterclaims. Inasmuch as the relief requested in the Complaint is for possession of the Property, and there is no demand for payment in the Complaint, there is no diversity jurisdiction to support the attempted removal of the FED Action to federal court. *See Paris v. GMAC Mortg. Corp.*, 2006 U.S. Dist. LEXIS 80533 at **2-3 (remand ordered in removed eviction action where defendant failed to indicate amount in controversy)

The last basis for removal alleged by Tatten is pursuant to 28 U.S.C. § 1443. Tatten states removal is proper because the district court judge failed to honor his request for accommodation,

a similar issue he raised in his prior lawsuit that was rejected by this Court and affirmed on appeal. Tatten has not met the pleading requirements for removal under Section 1443(1) and does not qualify for the protections afforded by Section 1443(2).

28 U.S.C. §1443 authorizes removal of a state court action: (1) Against any person who is denied or cannot enforce in the courts of such state a right under any law providing for the equal civil rights of citizens of the United States, or of all persons with the jurisdiction thereof; (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law. Removal under Section 1443(1) is narrow and well-defined. *See Davis v. Glanton*, 107 F.3d 1044, 1045 (3d Cir. 1997). The right denied must arise under a federal law "providing for specific civil rights states in terms of racial equality." *Johnson v. Mississippi*, 421 U.S. 213 (1975), *quoting Georgia v. Rachel*, 384 U.S. 780 (1966). See *Robinson v. Eichler*, 795 F. Supp. 1253, 1258 n.5 (D. Conn. 1992) (finding § 1443(1) inapplicable where removal was based on the ADA). "Second, it must also appear . . . that the removal petitioner is 'denied or cannot enforce' the specified federal rights in the courts of [the] State." *Johnson* at 219, quoting 28 U.S.C. § 1443(1).

Tatten has not alleged he was denied his civil rights based upon racial inequality. Furthermore, other than cite to a single order, Tatten has not alleged that his federal rights will be denied or cannot be enforced by the state court. To the contrary, Tatten references a directive from the Office of the Chief Justice, Supreme Court of Colorado [Motion, page 9], relating to accommodations under the Americans with Disabilities Act (the "ADA"). Thus, there are already procedures in place to protect Tatten's rights under the ADA in the state court system. Tatten has not alleged a systematic and continuous denial of his rights or an unwillingness of the Colorado

8

state courts to protect his civil rights. Indeed, a review of the state court docket demonstrates the trial court previously granted Tatten's requests for a continuance. [Exhibit 2, page 2] Tatten also disregards the general rule of concurrent jurisdiction. "[s]tate courts have concurrent jurisdiction over ADA claims." *Hapgood v. City of Warren,* 127 F.3d 490, 494 (6th Cir. 1997).

Tatten does not qualify for removal pursuant to Section 1443(2) as this section applies only to "federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." *City of Greenwood v. Peacock,* 384 U.S. 808, 824 (1966). Since Tatten has not alleged he is a federal officer or agent, removal under Section 1443(2) would likewise be improper.

## V.   **CONCLUSION**

Evictions are expedited matters under Colorado. Tatten has already delayed Plaintiff from obtaining possession of the Property by removing the case to the Denver County District Court, asserting counterclaims, filing multiple motions for continuances and by improperly removing the FED Action to this Court. It is apparent Tatten's actions are meant to further hinder and delay Plaintiff from obtaining possession of its collateral following a lawful, final foreclosure proceeding. Based on the foregoing, Plaintiff respectfully requests the Court to remand the FED Action as removal was untimely and this Court lacks jurisdiction over the claim for possession.

January 14, 2019

MCCARTHY & HOLTHUS, LLP

By:   */s/ Holly R. Shilliday*
Holly R. Shilliday, Attorney Reg. No. 24423
7700 E. Arapahoe Road, Suite 230
Centennial, Colorado 80112
Telephone: (303) 952-6905
hshilliday@mccarthyholthus.com

*Attorneys for LSF9 Master Participation Trust*

9

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January, 2019, a true and correct copy of the foregoing document was filed and served via U.S. Mail, first class postage prepaid, upon the following:

James P. Tatten, Esq.
8681 East 29th Avenue
Denver, CO 80238

/s/ *Susan LeMoine*
for McCarthy & Holthus, LLP

# ATTACHMENT FIVE

| DISTRICT COURT, DENVER COUNTY, COLORADO | |
|---|---|
| Court Address:<br>1437 Bannock Street, Rm 256, Denver, CO, 80202 | DATE FILED: June 19, 2019 |
| **Plaintiff(s)** LSF9 MASTER PARTICIPATION TRUST<br>v.<br>**Defendant(s)** JAMES P TATTEN | |
| | △ COURT USE ONLY △ |
| | Case Number: 2018CV336<br>Division: 209      Courtroom: |
| **ORDER RE:  MOTION TO STOP PROCEEDINGS AND FOR ORDER TO VACATE AND CORRECT ORDER RE: MOTION FOR SUMMARY JUDGMENT** | |

The motion/proposed order attached hereto: DENIED.

The Court finds that briefing will not assist in making its findings. Accordingly, upon a review of the file, the record, the impending trial date and the Court being advised in the premises, this Motion is DENIED.

Issue Date: 6/19/2019

*Kandace C. Gerdes*

KANDACE CECILIA GERDES
District Court Judge

| | |
|---|---|
| **DISTRCT COURT, COUNTY OF DENVER STATE OF COLORADO**<br><br>Court Address:<br><br>1437 Bannock Street<br>Denver, CO 80202<br>(720) 865-8301 | 19 JUN 17  AM 10: 19 |
| **Plaintiff(s):** LSF9 Master Participation Trust<br><br>v.<br><br>**Defendant(s):** James P. Tatten, and Any and all other occupants claiming an interest under the Defendants. | ▲   **COURT USE ONLY**   ▲ |
| **Party Without Attorney:**<br>James P. Tatten<br>8681 East 29th Avenue<br>Denver, Colorado 80238<br>Phone: (720) 256-3686<br>E-mail: jimtatten@legislativebasecamp.com | Case Number: 2018CV000336<br><br>Division: 209<br><br>Courtroom: |

## MOTION TO STOP PROCEEDINGS AND FOR ORDER TO VACATE AND CORRECT ORDER RE: MOTION FOR SUMMARY JUDGMENT

     **COMES NOW,** *pro se* Defendant, James P. Tatten ("Tatten"), and requests this Court vacate and correct Order Re: Motion for Summary Judgment, which was filed on June 7, 2019. Defendant Tatten states and alleges the following:

     Defendant Tatten files this Motion under Directive 04-07 of the Office of the Chief Justice, Supreme Court of Colorado, and *Americans with Disabilities Act and The Colorado State Courts.*

1906190044 0356 5-1016 4

## SUMMARY

Tatten requests this Court vacate and correct Order Re: Motion for Summary Judgment, so as to effectuate proper service and allow the cognitively-disabled, *pro se* Tatten adequate time to respond to Plaintiff LSF9' Motion for Summary Judgment.

At this stage, ruling on LSF9's Motion for Summary Judgment or entering judgment on LSF9's claim for forcible entry and detainer will violate the cognitively-disabled, *pro se* Tatten's fundamental right to due process and equal protection under the laws and the Constitutions of the State of Colorado and the United States of America.

## STATEMENT OF FACTS

On June 12, 2019, Tatten received, via U.S. Mail, a copy of District Court ORDER RE: MOTION FOR SUMMARY JUDGMENT.

The envelop that delivered the District Court ORDER RE: MOTION FOR SUMMARY JUDGMENT is date stamped, by U.S. Postage, June 10, 2019.

The ORDER RE: MOTION FOR SUMMARY JUDGMENT was issued by the District Court and filed on June 7, 2019.

The ORDER RE: MOTION FOR SUMMARY JUDGMENT provides "Plaintiff shall have 7 day within which to reply to the substantive portion of the Opposition that addresses the filed Motion for Summary Judgment.

The ORDER RE: MOTION FOR SUMMARY JUDGMENT also provides "No other briefing on the issue will be considered.  The Court will then issue its order on the Motion for Summary Judgment."

As repeatedly stated, Plaintiff LSF9 has never served the cognitively-disabled, *pro se* Tatten with a copy of the Motion for Summary Judgment nor the Certificate of Service.

1906190044 0356 5-1016 5

On June 13, 2019, Tatten filed Motion for Hearing on Summary Judgment.

In his Motion, Tatten states "As of the date and time of the filing of this Motion for Hearing on Summary Judgment neither LSF9 nor this Court have provided the cognitively-disabled, *pro se* Tatten with a copy of the alleged Motion for Summary Judgment and alleged Certificate of Service."

On June 13, 2019, Tatten went to the basement of the Denver City and County Building to search the Court record and receive a copy of the alleged Motion for Summary Judgment and alleged Certificate of Service.

On June 13, 2019, Tatten did pay the Court for a copy of the Motion for Summary Judgment and the Certificate of Service filed by on April 22, 2019 by LSF9.

The Certificate of Service provides "I hereby certify that on this 22nd day of April 2019, a true and correct copy of the foregoing Motion For Summary Judgment, were served, via the Court's Electronic Filing System, to those persons below:...."

The Court's Electronic Filing System does not provide service to Tatten.

Tatten did not receive LSF9's Motion for Summary Judgment via the Court's Electronic Filing System.

LSF9 knew, through its counsel, that Tatten could not receive service of the Motion for Summary Judgment via the Court's Electronic Filing System.

LSF9 knew, through its counsel, that Tatten would not receive service of the Motion for Summary Judgment via the Court's Electronic Filing System.

LSF9 knew, through its counsel, that Tatten did not receive service of the Motion for Summary Judgment via the Court's Electronic Filing System.

1906190044 0356 5-1016 6

Despite knowing Tatten was not served with its Motion for Summary Judgment, LSF9, through its counsel, filed its Notice of Non-Opposition to Motion for Summary Judgment and request to enter judgment for forcible entry and detainer with this Court.

If, in the future, Tatten is properly served with a motion for summary judgment, he will show this Court sufficient facts that defeat LSF9's Motion for Summary Judgment, including establishing and proving the following disputed facts concerning LSF9's Motion for Summary Judgment and its claim for eviction:

(1)     The District Court Orders Authorizing Power of Sale and Approving Sale are void – both Orders are legal nullities;

(2)     The District Court Orders Authorizing Power of Sale and Approving Sale, at issues in this case, violate the Constitutions of the State of Colorado and the Constitution of the United States of America;

(3)     District Court lacks subject matter jurisdiction;

(4)     LSF9 is not a real party in interest;

(5)     LSF9, through its counsel, has made misstatements and misrepresentations of material facts to this Court;

(6)     LSF9, through its counsel, has offered statements concerning facts, to this Court, that were not complete, accurate nor true; and

(7)     The power of sale contained in the Deed of Trust extinguished by operation of Colorado law long before LSF9 efforts to collect a time-barred and unenforceable debt.

## ARGUMENT

This Court should immediately stop proceeding in this matter.

1906190044 0356 5-1016 7

It is an undisputed fact that Tatten is a cognitively-disabled *pro se* litigant with significant cognitive disabilities and limitations, including significant limitations related to reading, writing, short-term memory, scheduling and processing information.

For more than three years, LSF9, through its counsel, has used the Colorado Rules of Civil Procedure to confuse, mislead and trick the cognitively-disabled *pro se* Tatten.

The Certificate of Service filed with this Court concerning LSF9's Motion for Summary Judgment is another example of LSF9's egregious conduct directed at the cognitively-disabled *pro se* Tatten.

The LSF9's Certificate of Service provides "I hereby certify that on this 22nd day of April 2019, a true and correct copy of the foregoing Motion For Summary Judgment, were served, via the Court's Electronic Filing System, to those persons below:...."

The Court's Electronic Filing System does not provide service to Tatten.

LSF9's Certificate of Service shows, establishes and proves that Tatten did not receive service.

Because he was not properly served, any deadlines related to the Motion for Summary Judgment do not apply to Tatten.

The requirements and burden of providing proper service were entirely within the control of LSF9 and its counsel.

LSF9, through its counsel, misstated and misrepresented to this Court that Tatten was served with the Motion for Summary Judgment.

LSF9, through its counsel, have a history of misstatements and misrepresentations of important facts to this Court in this case.

1906190044 0356 5-1016 8

Because LSF9 failed to properly serve Tatten, a cognitively-disabled *pro se* litigant, Tatten has been denied his legal right to read, process and respond to LSF9's Motion for Summary Judgment.

Because of LSF9 failed to properly serve Tatten, a cognitively-disabled *pro se* litigant, Tatten has been denied his legal right to due process and equal protection.

Had the fundamental requirements of due process, notice and service been honored Tatten would have had the opportunity to respond to LSF9's Motion for Summary Judgment and present his facts, evidence and arguments.

Had the fundamental requirements of due process, notice and service been honored, Tatten would have shown, established and proven the following disputed facts concerning the Motion for Summary Judgment and LSF9's claim for eviction:

(1)   The District Court Orders Authorizing Power of Sale and Approving Sale are void – both Orders are legal nullities;

(2)   The District Court Orders Authorizing Power of Sale and Approving Sale, at issues in this case, violate the Constitutions of the State of Colorado and the Constitution of the United States of America;

(3)   District Court lacks subject matter jurisdiction;

(4)   LSF9 is not a real party in interest;

(5)   LSF9, through its counsel, has made misstatements and misrepresentations of material facts to this Court;

(6)   LSF9, through its counsel, has offered statements concerning facts, to this Court, that were not complete, accurate nor true; and

1906190044 0356 5-1016 9

(7)     The power of sale contained in the Deed of Trust extinguished by operation of Colorado law long before LSF9 efforts to collect a time-barred and unenforceable debt.

At all times relevant to this case, Tatten has requested the Colorado Judicial Branch provide an accommodation under the Americans with Disabilities Act (ADA); Tatten has called judicial attention his *pro se* status; and Tatten has reported his cognitive disability and cognitive limitations to the Colorado Judicial Branch and this Court.

Despite the facts, his reports and his requests, the Colorado Judicial Branch has failed to provide the *pro se*, cognitively-disabled Tatten with any accommodation for his cognitive disability and cognitive limitations.

## CONCLSUSION

For those reasons, Tatten respectfully requests this Court stop the proceedings in their entirety and vacate and correct its Order Re: Motion for Summary Judgment, filed June 7, 2019, so as to effectuate proper service and allow the cognitively-disabled, *pro se* Tatten adequate time to respond to LSF9' Motion for Summary Judgment.

Respectfully submitted this 17th day of June, 2019.

BY: _____

JAMES P. TATTEN
8681 East 29th Avenue
Denver, CO 80238
Phone:  (720) 256-3686
Email: jimtatten@legislativebasecamp.com
*Pro se* Defendant

# VERIFIED STATEMENT

STATE OF COLORADO    )
                           )

COUNTY OF DENVER    )

I, James P. Tatten, hereby swear and affirm that the facts set forth in this Motion to Stop Proceedings and Order to Vacate and Correct Order Re: Motion for Summary Judgment are true to the best of my information, knowledge and belief.

BY: _____

James P. Tatten

*Pro se* Defendant

Subscribed and sworn before me in the County of Denver, State of Colorado, this 17th day of June, 2019, by James P. Tatten.

Witness my hand and official seal.    My Commission expires: 12-01-2019

JOSH THOMPSON
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20114075829
MY COMMISSION EXPIRES DECEMBER 01, 2019

_____

Notary Public

1906190044 0356 5-1016 11

## CERTIFICATE OF SERVICE

I hereby certify that on 17th day of June, 2019, true and correct copies of the Motion to Stop Proceedings and Order to Vacate and Correct Order Re: Motion for Summary Judgment and Verified Statement were served, via electronic transmission, to Plaintiff LSF9 Master Participation Trust at the following email addresses:

- Albert Frazier            afrasier@McCarthyHolthus.com

- Evictions               evictions@mccarthyholthus.com

- Holly Shilliday          hshilliday@mccarthyholthus.com

- Unknown              IDSMH@McCarthyHolthus.com

DATED: June 17, 2019.

BY: _James P. Tatt_____

JAMES P. TATTEN
8681 East 29th Avenue
Denver, CO 80238
Phone: (720) 256-3686
E-mail: jimtatten@legislativebasecamp.com
*Pro se* Defendant

1906190044 0356 5-1016 12

# ATTACHMENT SIX

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>Court Address:<br>1437 Bannock Street, Rm 256, Denver, CO, 80202<br>**Plaintiff(s)** LSF9 MASTER PARTICIPATION TRUST<br>v.<br>**Defendant(s)** JAMES P TATTEN | DATE FILED: June 19, 2019<br><br><br>⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2018CV336<br>Division: 209        Courtroom: |
| **ORDER RE:  MOTION FOR HEARING ON SUMMARY JUDGMENT** | |

The Court has reviewed the Motion for Hearing on Summary Judgment. The Court does not find that additional briefing would be of assistance in ruling on this Motion. Upon a review of the file file, the record or action, this Court's June 7, 2019 Order and being advised in the premises, the Court finds that a hearing on the motion for summary judgment would not assist the Court. Accordingly, the Motion is DENIED.

Issue Date: 6/19/2019

*Kandace C. Gerdes*

KANDACE CECILIA GERDES
District Court Judge

| DISTRICT COURT, DENVER COUNTY, COLORADO | |
| --- | --- |
| Court Address:<br>1437 Bannock Street, Rm 256, Denver, CO, 80202 | DATE FILED: June 19, 2019 |
| **Plaintiff(s)** LSF9 MASTER PARTICIPATION TRUST<br>v.<br>**Defendant(s)** JAMES P TATTEN | |
| | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2018CV336<br>Division: 209          Courtroom: |
| **Order: SUPPLEMENT TO MOTION TO STOP PROCEEDINGS AND FOR ORDER TO VACATE AND CORRECT ORDER w/ attach** | |

The motion/proposed order attached hereto: DENIED.

Issue Date: 6/19/2019

*Kandace E Gerdes*

KANDACE CECILIA GERDES
District Court Judge

| | |
|---|---|
| **DISTRCT COURT, COUNTY OF DENVER STATE OF COLORADO**<br><br>Court Address:<br><br>1437 Bannock Street<br>Denver, CO 80202<br>(720) 865-8301 | DISTRICT COURT<br>DENVER, COLORADO<br><br>2019 JUN 18  PM 1: 20 |
| **Plaintiff(s):** LSF9 Master Participation Trust<br><br>v.<br><br>**Defendant(s):** James P. Tatten, and Any and all other occupants claiming an interest under the Defendants. | ▲   **COURT USE ONLY**   ▲ |
| **Party Without Attorney:**<br>James P. Tatten<br>8681 East 29th Avenue<br>Denver, Colorado 80238<br>Phone: (720) 256-3686<br>E-mail: jimtatten@legislativebasecamp.com | Case Number: 2018CV000336<br><br>Division:  209<br><br>Courtroom: |
| **SUPPLEMENT TO MOTION TO STOP PROCEEDINGS AND FOR ORDER TO VACATE AND CORRECT ORDER** | |

**COMES NOW,** *pro se* Defendant, James P. Tatten ("Tatten"), and files Affidavit and Testimony of Private Investigator William J. Paatalo.  The attached Affidavit and Testimony supplement Tatten's Motion to Stop Proceedings and for Order to Vacate and Correct Order Re: Motion for Summary Judgment.

Tatten filed his Motion to Stop Proceedings and for Order to Vacate and Correct Order Re: Motion for Summary Judgment with this Court yesterday, June 17, 2019.

1906190044 1650 5-1016 15

Respectfully submitted this 18th day of June, 2019.

BY: _____

JAMES P. TATTEN
8681 East 29th Avenue
Denver, CO 80238
Phone:  (720) 256-3686
Email: jimtatten@legislativebasecamp.com
*Pro se* Defendant

1906190044 1650 5-1016 16

## CERTIFICATE OF SERVICE

*Supplement To*

I hereby certify that on 18th day of June, 2019, true and correct copies of the Motion to Stop Proceedings and Order to Vacate and Correct Order Re: Motion for Summary Judgment and Verified Statement were served, via electronic transmission, to Plaintiff LSF9 Master Participation Trust at the following email addresses:

- Albert Frazier          afrasier@McCarthyHolthus.com

- Evictions               evictions@mccarthyholthus.com

- Holly Shilliday         hshilliday@mccarthyholthus.com

- Unknown                 IDSMH@McCarthyHolthus.com

DATED: June 18, 2019.

BY: _____ James P Tatten

JAMES P. TATTEN
8681 East 29th Avenue
Denver, CO 80238
Phone:  (720) 256-3686
E-mail: jimtatten@legislativebasecamp.com
*Pro se* Defendant

1906190044 1650 5-1016 17

# ATTACHMENT SEVEN

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, STATE OF COLORADO**<br>Court Address:<br>1437 Bannock Street, Room 256<br>Denver, CO 80202<br>Telephone: 720-865-8301 | DATE FILED: June 14, 2019 |
| Plaintiff<br>LSF9 MASTER PARTICIPATION TRUST,<br><br>vs.<br><br>Defendant:<br>JAMES P. TATTEN, and any and all<br>Occupants claiming an interest under the<br>Defendants | ▲ COURT USE ONLY ▲ |
| McCarthy & Holthus, LLP<br>Holly R. Shilliday, Attorney Reg. No. 24423<br>7700 E. Arapahoe Road, Suite 230<br>Centennial, CO 80112<br>Telephone: (877) 369-6122<br>E-mail: hshilliday@mccarthyholthus.com<br>Attorney for Plaintiff | Case No.: 2018CV000336<br><br>Div.: 209 |
| **REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** | |

Plaintiff LSF9 Master Participation Trust ("LSF9" and/or "Plaintiff"), through counsel, McCarthy and Holthus LLP, hereby submits its Reply in Support of the Motion for Summary Judgment in response to the Notice of Non-Opposition to Motion for Summary Judgment filed by Defendant James P. Tatten ("Tatten"). The Reply is supported by the Affidavit of Susan LeMoine filed concurrently herewith.

**A. Introduction**

Tatten's latest pleading is a continuation of his repeated and unfounded attacks on a lawfully completed foreclosure sale and was filed to further hinder and delay Plaintiff from

1

1906140051 2409 4-1014 2

obtaining possession of the single family residence at 8681 East 29th Avenue, Denver, CO 80238 (the "Property") which it now owns.

Summary judgment in this Forcible Entry and Detainer Action ("FED") is warranted because: (1) Tatten was timely served with the summary judgment motion and all supporting documents; (2) Tatten admits he received documents relating to the summary judgment motion as he attached the first two pages of the Request for Judicial Notice mailed to him; (3) Tatten did not timely respond to the motion; (3) Tatten has failed to raise a triable issue of fact to counter the undisputed facts set forth in the motion; (4) Tatten may no longer attack the validity of the foreclosure sale as all claims asserted by him were dismissed, with prejudice, and affirmed on appeal; and (5) this Court has subject matter jurisdiction over the FED since the property is located in Denver County, Colorado.

**B.   Tatten Was Served With the Motion for Summary Judgment and All Supporting Documents.**

Plaintiff filed its Motion for Summary Judgment (the "SJ Motion"), the proposed order, Request for Judicial Notice with six exhibits, and the Affidavits of Mailing and Posting (collectively, the SJ Documents") in the afternoon of April 22, 2019.   That morning, Holly Shilliday, counsel for Plaintiff, telephoned and e-mailed Tatten to meet and confer with him regarding the SJ Motion.  Ms. Shilliday did not hear back from Tatten and instructed her paralegal to file and serve the SJ Documents that afternoon, around 3:30.  Tatten responded to the e-mail the next day, indicating he would be opposing the SJ Motion.  Both the April 22, 2019 e-mail and Tatten's response are attached to his Opposition as Exhibit 4.

Given the size of the SJ Documents (111 pages), the documents were mailed directly to Tatten rather than having them mailed through the Court's Electronic Filing System. In the ordinary course of business, the law firm makes copies of all items mailed from the office including

copies of the envelopes. As set forth in the attached Affidavit of Susan LeMoine ("LeMoine Affidavit"), she scanned the SJ Documents and envelope, placed the SJ Documents in the envelope, and deposited the envelope in the U.S. mail box located in the lobby. True and correct copies of the SJ Documents and addressed and metered envelope are attached to the LeMoine Affidavit as Exhibit 1. The SJ Documents were mailed to Tatten on April 22, 2019. The first documents in the package were the Request for Judicial Notice and six documents relating thereto. Next, the package included the Motion for Summary Judgment (starting at page 100 in Exhibit 1), the Affidavits of Mailing and Posting and the proposed order.

Tatten admits he received the envelope, although he does not attach it to his Opposition. Next, he contends he only received the Request for Judicial Notice and exhibits and purportedly did not receive the other documents. As set forth in the LeMoine Affidavit, the Motion, Affidavits and proposed order were behind the Request for Judicial Notice and exhibits in the envelope. Oddly, Tatten, who is an attorney and professional lobbyist, did not reach out to Ms. Shilliday to inquire about the Request for Judicial Notice, the attachments thereto or the SJ Documents he claims he did not receive. *See Tatten v. City and County of Denver*, 730 Fed.Appx. 620, 623-24 (10th Cir. 2018) (Footnote 2) His explanation that he only received some of the documents that were placed in the envelope is not credible.

The deadline for Tatten to respond to the SJ Motion was May 13, 2019. Counsel for Plaintiff waited to file its Notice of Non Opposition to Motion for Summary Judgment until May 31, 2019. Tatten's Opposition was filed four days later.

## C. **Plaintiff is Entitled to Summary Judgment as a Matter of Law.**

Similar to Tatten's prior pleadings, motions, and oppositions, Tatten throws out purported "disputed" facts without any evidentiary or legal support and repeats arguments that have already

been rejected by this Court and other courts. A careful review of the SJ Motion and the Opposition demonstrate that Tatten has not disputed any of the facts set for in the SJ Motion and supporting evidence. Thus, summary judgment is appropriate, as a matter of law.

C.R.C.P. 56 governs motions for summary judgments. The purpose of a motion for summary judgment is to save litigants the expense and time connected with a trial when, as a matter of law based upon admitted facts, one of the parties cannot prevail. *O.C. Kinney, Inc. v. Paul Hardeman, Inc.*, 379 P.2d 628 (Colo. 1963). Where there is no genuine issue as to any material fact, the issues are properly resolved as matters of law. *Enger v. Walker Field, Colo. Pub. Airport Auth.*, 508 P.2d 1245 (Colo. 1973). With respect to an opposition to e a summary judgment motion, Rule 56(e) states, in pertinent part, the following:

> When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of the opposing party's pleadings, but the opposing party's response by affidavits or otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If there is no response, summary judgment, if appropriate, shall be entered.

Thus, once the moving party has met its burden of showing a lack of disputed issues of material fact, then the nonmoving party must demonstrate the existence of competent evidence to controvert the moving party's assertion that there is an absence of evidence. *Siepiersk v. Catholic Health Initiative Mountain Region*, 37 P.3d 537 (Colo. App. 2001).

Tatten's Opposition can be divided into four parts. First, he contends the Court lacks subject matter jurisdiction in this FED Action. Second, he attacks the non-judicial foreclosure sale. Third, he alleges insufficiency of process of the Notice of Non-Opposition to Motion for Summary Judgment pursuant to C.R.C.P. 12(b)(4). Finally, he concludes, without any evidence, that there are triable issues of fact regarding the propriety of the non-judicial foreclosure. Each of these arguments is without merit and should be rejected by the Court.

### 1. The Court Has Subject Matter Jurisdiction Over the FED Action Pursuant to C.R.S. § 13-40-109.

It is ironic that Tatten now contends this Court lacks subject matter jurisdiction over this FED Action since he is the one who removed the FED Action from the Denver County Court. Nonetheless, Tatten's subject matter jurisdiction argument can be dealt with in summary fashion. C.R.S. § 13-40-109 provides that district and county courts have jurisdiction over all FED actions. The statute states the following:

> **The district courts in their respective districts and county courts in their respective counties have jurisdiction of all cases of forcible entry, forcible detainer, or unlawful detainer arising under this article, and the person entitled to the possession of any premises may recover possession thereof by action brought in any of said courts in the manner provided in this article.** On and after January 1, 1991, in all actions brought before county courts under section 13-40-104 (1)(f) to (1)(i), where the allegations of the complaint are put in issue by a verified answer and in actions in which the verified answer alleges a monthly rental value of the property in excess of fifteen thousand dollars[1], the county court, upon the filing of said answer, shall suspend all proceedings therein and certify said cause and transmit the papers therein to the district court of the same county. Causes so certified by the county court shall be proceeded within the courts to which they have been so certified in all respects as if originally begun in the court to which they have been certified. On and after January 1, 1991, the jurisdiction of the county court to enter judgment for rent, or damages, or both and to render judgment on a counterclaim in forcible entry and detainer shall be limited to a total of fifteen thousand dollars in favor of either party, exclusive of costs and attorney fees. [Emphasis added]

Plaintiff filed the FED Action in the Denver County Court.   Once Tatten asserted counterclaims against Plaintiff, the FED Action was removed to this Court.   Pursuant to C.R.S. § 13-40-109, this Court has subject matter jurisdiction over the claims and now dismissed counterclaims.

---

[1] On January 1, 2019, the amounts were increased to twenty-five thousand.

1906140051 2409 4-1014 6

## 2. The Foreclosure Sale is Final and Cannot be Set Aside.

Under Colorado law, the title to the property vests in the holder of the certificate of purchase upon expiration of the redemption period. C.R.S. § 38-38-501(1). Section 501 further requires the public trustee to execute and record a confirmation deed prior to the tenth business day after title vests. *Id.* The title is free and clear of all liens and encumbrances junior to the lien foreclosure. *Id.* In addition, the foreclosure is final, thereby extinguishing all of the owner's right, title and interest in the property. *Mount Carbon Metr. Dist, v. Lake George Co.*, 847 P.2d 254, 256-257 (Colo. App. 1993), *citing Baber v. Baber*, 28 Colo. App. 530, 474 P.2d 630 (1970).

The foreclosure sale was completed more than three years ago, was approved by the Court and is now final. Tatten did not include a Counterclaim to set aside the sale. Even if such a claim were proper, a foreclosure sale may only be set aside for fraud, deceit, collusion or if the party was misled by the public trustee. *Mount Carbon* at 257. As a claim for fraud and deceit had to be filed within two years under the statute of limitation, the sale cannot be set aside and is now final.

Finally, Tatten did not prevail on his attacks of the foreclosure process. Tatten challenged the foreclosure sale in connection with a Complaint he filed against Plaintiff in the United States District Court, District of Colorado (the "Federal Court"), Case No. 16-cv-01603 (the "Federal Court Action"). The Federal Court dismissed the claims, with prejudice, and the Tenth Circuit Court of Appeals affirmed the dismissal of the claims. Attached hereto as Exhibit 7 is a true and correct copy of the Order Affirming the Dismissal of the Claims. Tatten sought review of the decision from the United States Supreme Court but his petition for a writ of certiorari was denied.

## 3. Tatten Has Failed to Raise any Triable Issues of Fact.

Plaintiff set forth eight undisputed facts in its motion for summary judgment showing why it is entitled to a judgment for possession of the property. Pursuant to C.R.C.P. 56(e), Tatten

6

cannot simply deny the facts. Instead, as the nonmoving party, Rule 56(e) requires Tatten to demonstrate the existence of competent evidence to controvert the evidence set forth in Plaintiff's motion. See C.R.C.P. 56(e) and *Siepiersk v. Catholic Health Initiative Mountain Region*, 37 P.3d 537 (Colo. App. 2001). Not only did Tatten fail to introduce any evidence to support his Opposition, he also did not and cannot controvert any of the undisputed facts set forth in the motion. Thus, summary judgment is warranted, as a matter of law.

The undisputed facts are summarized below:

1. Tatten executed a Deed of Trust.

2. The Denver County Public Trustee's Office conducted a non-judicial foreclosure sale on June 9, 2016, and issued a certificate of purchase in connection therewith.

3. The Public Trustee issued a Public Trustee's Confirmation Deed (the "Deed") to Plaintiff on July 5, 2016

4. The sale was approved by the District Court on June 14, 2016.

5. A Demand for Possession was served on Defendant James Tatten and All Occupants claiming an interest under the Defendants on June 8, 2018, by posting and mailing

6. The Summons and Complaint were served on Defendant James Tatten and All Occupants claiming an interest under the Defendants on June 22, 2018, by posting and mailing

7. Defendant James Tatten is not engaged in military service of the United States.

8. Defendant James Tatten has not delivered possession of the Property to Plaintiff.

Tatten has not countered any of the undisputed facts nor did he support his opposition with admissible evidence. Instead, he makes a number of unsupported statements without any legal authority or evidentiary basis. Again, to the extent Tatten is challenging the foreclosure sale, his

1906140051 2409 4-1014 8

claims have already been dismissed and cannot be raised in an effort to defeat Plaintiff's entitlement to summary judgment.

## CONCLUSION

Based on the foregoing, Plaintiff LSF9 Master Participation Trust respectfully requests the Court grant its motion for summary judgment because there are no triable issues of material fact.

**DATED** this 14th day of June 2019.

McCARTHY & HOLTHUS, LLP

By: /s/ *Holly R. Shilliday*
Holly R. Shilliday, Attorney Reg. No. 24423
7700 E. Arapahoe Road, Suite 230
Centennial, CO 80112
Telephone: (877) 369-6122
E-mail: hshilliday@mccarthyholthus.com
Attorney for LSF9 Master Participation Trust

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of June 2019, a true and correct copy of the foregoing documents were served, via the Court's Electronic Filing System, to those persons listed below:

James P. Tatten, Esq.
8681 East 29th Avenue
Denver, CO 80238

                                        /s/ Susan LeMoine
                                        Susan LeMoine

9